# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SELECT RETRIEVAL, LLC, | § | |
| | § | |
| Plaintiff | § | |
| | § | Civil Action No.  1:11-cv-00812-RGA |
| v. | § | |
| | § | **JURY TRIAL REQUESTED** |
| AMERIMARK DIRECT, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF SELECT RETRIEVAL, LLC'S OPPOSITION TO ADOBE SYSTEMS INCORPORATED'S MOTION TO INTERVENE, SEVER, AND STAY PROCEEDINGS PENDING ADJUDICATION OF ADOBE'S DECLARATORY JUDGMENT ACTION

Dated:  December 20, 2012

Stamatios Stamoulis #4606
    stamoulis@swdelaw.com
Richard C. Weinblatt #5080
    weinblatt@swdelaw.com
STAMOULIS & WEINBLATT LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone:  (302) 999-1540

Steven R. Daniels (admitted *pro hac vice*)
    sdaniels@farneydaniels.com
FARNEY DANIELS LLP
800 S. Austin Avenue, Suite 200
Georgetown, TX 78626
Telephone:  (512) 582-2828

*Attorneys for Plaintiff*
*Select Retrieval, LLC*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     NATURE AND STAGE OF PROCEEDINGS ..................................................... 1

III.    SUMMARY OF ARGUMENT ............................................................................. 1

IV.     STATEMENT OF FACTS .................................................................................... 3

V.      ARGUMENT ........................................................................................................ 4

        A.    Adobe Should Be Denied Intervention As Of Right. ............................... 4

              1.    Adobe's Motion Is Not Brought At An Appropriate Time........................ 4

              2.    Adobe Does Not Have A "Significantly Protectable" Interest. ................. 6

              3.    The Disposition Of The Action Will Not Impair Or Impede Adobe's
                    Ability To Protect Any Alleged Protectable Interests. ............................. 7

              4.    Defendants Adequately Represent Adobe's Interests In This Case........... 8

        B.    Adobe Should Not Be Permitted To Permissively Intervene. ................... 9

        C.    Severance Is Unwarranted In This Action. .............................................. 10

        D.    The Court Should Deny Adobe's Request For A Stay. ........................... 11

              1.    A Stay Of The Claims Of The First-Filed Defendants' Action Will Not
                    Simplify The Issues.................................................................................. 11

              2.    A Stay of Proceedings Will Prejudice Select Retrieval. .......................... 13

              3.    The Court Should Deny Adobe's Request For A Stay As Adobe Does Not
                    Meet The "Customer Suit" Exception. .................................................... 14

              4.    A Stay Would Not Streamline The Issues. ............................................... 18

              5.    Adobe Cannot Demonstrate A "Clear Case Of Hardship." ..................... 20

VI.     CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.P.T., Inc. v. Quad Environmental Techs. Corp.*,
    698 F. Supp. 718 (N.D. Ill. 1988) ............................................................17

*Adobe Sys. v. Kelora Sys. LLC*,
    2011 U.S. Dist. LEXIS 140675 (N.D. Cal. Dec. 7, 2011) ........................6

*Air Prods. & Chems., Inc. v. MG Nitrogen Servs.*,
    133 F. Supp. 2d 354 (D. Del. 2001).........................................................17

*Apeldyn Corp. v. Sony Corp.*,
    2012 U.S. Dist. LEXIS 47734 (D. Del. Apr. 4, 2012) .......................15, 20

*Beach v. KDI Corp.*,
    490 F.2d 1312 (3d Cir. 1974).....................................................................9

*Benjamin v. Dep't of Pub. Welfare of Commonwealth*,
    432 Fed. Appx. 94 (3d Cir. 2011) ..............................................................6

*Brody v. Spang*,
    957 F.2d 1108 (3d Cir. 1992).....................................................................10

*Choike v. Slippery Rock Univ.*,
    297 Fed. Appx. 138 (3d Cir. 2008)..........................................................5, 9

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
    734 F. Supp. 656 (D. Del. 1990) ...............................................................15

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortgage Loan
    Litig*,
    418 F.3d 277 (3d Cir. 2005)........................................................................8

*In re Fine Paper Antitrust Litigation*,
    695 F.2d 494 (3d Cir. 1982)........................................................................5

*In re Laughlin Prods.*,
    265 F. Supp. 2d 525 (E.D. Pa. 2003) .......................................................16

*JoeScan, Inc. v. LMI Techs., Inc.*,
    2007 U.S. Dist. LEXIS 65498 (W.D. Wash. Sept. 5, 2007)..............15, 16

*Kahn v. Gen'l Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989)......................................................15, 18, 19

iii

*Karr v. Castle*,
    768 F. Supp. 1087 (D. Del. 1991)......................................................................................4

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990)......................................................................................15

*Kleissler v. United States Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998)........................................................................................4, 6

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)..............................................................................................11, 13

*Lifelink Pharm., Inc. v. NDA Consulting, Inc.*,
    2007 U.S. Dist. 62674 (N.D. Ohio Aug. 24, 2007) ............................................................17

*Mendenhall v. Cedarapids, Inc.*,
    5 F.3d 1557 (Fed. Cir. 1993)..........................................................................................7

*Powell v. Home Depot U.S.A., Inc.*,
    663 F.3d 1221 (Fed. Cir. 2011)......................................................................................12

*Pragmatus Telecom, LLC v. The Neiman Marcus Grp., Inc.*,
    No. 6:11cv620 (E.D. Tex. Nov. 20, 2012)............................................................16, 17, 18

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011)......................................................................................15

*Steinberg v. Shearson Hayden Stone, Inc.*,
    598 F. Supp. 273 (D. Del. 1984).......................................................................................9

*Tegic Commc'n Corp. v. Bd. Of Regents of Univ. of Tex. Sys.*,
    458 F.3d 1335 (Fed. Cir. 2006)......................................................................................16

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*,
    676 F. Supp. 2d 321 (D. Del. 2009)....................................................................11, 12, 15, 19

*United States v. Alcan Aluminum*,
    25 F.3d 1174 (3d Cir. 1994)...........................................................................................4

## OTHER AUTHORITIES

FED. R. CIV. P. 24 .......................................................................................................4, 8, 9

FED. R. CIV. P. 33 ...........................................................................................................14

FED. R. CIV. P. 36 ...........................................................................................................14

FED. R. CIV. P. 45 ...........................................................................................................14

iv

## I.      <u>INTRODUCTION</u>

Plaintiff Select Retrieval, LLC ("Select Retrieval") submits this response in opposition to Adobe Systems Incorporated's ("Adobe") Motion to Intervene, Sever, and Stay Proceedings Pending Adjudication of its Declaratory Judgment Action ("Adobe's Motion").

Over a year after this litigation began, Adobe seeks intervention for the purpose of staying the patent infringement case against Macy's Inc. ("Macy's"), Hayneedle, Inc. ("Hayneedle"), Ross-Simons of Warwick Inc. ("Ross-Simons"), and Charming Shoppes Inc. ("Charming") (collectively "Defendants") in favor of Adobe's second-filed declaratory judgment action (the "DJ action").  Select Retrieval brought suit against Defendants, licensees of Adobe, due to their infringement of U.S. Patent No. 6,128,617 ("'617 patent").

Given the foregoing, Adobe's Motion should be denied.

## II.     <u>NATURE AND STAGE OF PROCEEDINGS</u>

This lawsuit has been ongoing for fifteen months.  On September 13, 2011, Select Retrieval filed this lawsuit alleging infringement of the '617 patent by Defendants.  (D.I. 1.) Since that time, there has been significant forward motion in this case.  The Court issued its Scheduling Order on August 27, 2012, and a final trial date has been set. (D.I. 385.)  The parties are engaged in discovery and have served their initial disclosures.  Moreover, Defendants produced their core technical documents in November 2012, and Select Retrieval served its initial infringement contentions on Defendants on December 17, 2012.

## III.    <u>SUMMARY OF ARGUMENT</u>

1.      Adobe's intervention in this matter is improper.  As a preliminary matter, Adobe's intervention is not timely.  Adobe has known about this litigation for fifteen months and inexplicably chose to wait until December 2012 to move to intervene.  Further, intervention as of

1

right should be denied because Adobe has not given a valid reason for the delay and the length of the delay.  Moreover, Adobe ignores the prejudice of intervention to Select Retrieval.  Finally, Adobe does not meet the threshold requirements for permissive intervention.

2.      Severance in this case is unwarranted and has not been requested by the other defendants in the fifteen months this litigation has been pending.  However, in the event the Court elects to sever Defendants, Select Retrieval requests that the Court consolidate the actions for the purposes of claim construction and validity.

3.      Adobe's request for a stay should be denied as Adobe fails to make the required showing to warrant a stay.  Significantly, a stay will not simplify the issues at trial, as Defendants are the direct infringers reaping profits from performing the patented methods and by providing their own services, independently of Adobe.  Further, Adobe does not have <u>any legal obligation</u> to defend or indemnify Defendants,[1] but relies solely on the fact that Defendants "have asked Adobe to defend and indemnify them[.]" (D.I. 535 at 2.)  Moreover, Adobe does not argue that Adobe has been the only supplier of infringing technology to Defendants for the entire six-year damages period relevant to this case.  Indeed, as explained below, Select Retrieval has reason to believe several Defendants have used other suppliers during the pre-suit damages period.   At a minimum, Select Retrieval will require additional discovery from Defendants to determine whether Select Retrieval has infringement claims against Defendants entirely independent of Adobe's technology, and a stay would prejudice those efforts.  Further, Defendants have <u>not</u> agreed to be bound by any ruling affecting Adobe if the stay is entered and thus the stay would create inefficiencies, and the risk of inconsistent results.  Giving preference to Adobe's DJ Action would not only fail to resolve all issues with respect to Defendants, but will have the

---

[1] To Select Retrieval's knowledge, based on the facts presented herein, Adobe does not in fact have any obligation to defend or indemnify Defendants.

2

effect of unfairly prejudicing Select Retrieval by limiting Select Retrieval's ability to obtain information necessary to build its case.  Therefore, Select Retrieval respectfully requests that the Court deny Adobe's Motion.

## IV.    STATEMENT OF FACTS

Select Retrieval filed this lawsuit alleging infringement of the '617 patent by Defendants in September 2011.  (D.I. 1.)  Defendants have directly infringed by making and/or using one or more websites by using a method that embodies the inventions claimed in the '617 patent.  (*Id.*) The '617 patent covers a method for enabling search functions and data retrieval, including website features such as category and feature based product searches, and as such, Defendants are direct infringers whose own conduct is at issue.  Defendants sell products which require actual performance of the claimed methods for which Adobe does not collect profits.

Fifteen months after this lawsuit was filed, Adobe now attempts to intervene on behalf of Defendants.  (D.I. 535.)  Adobe alleges that it has provided enterprise software and services through Digital Marketing technology that Defendants use.  (*Id.* at 6.)  Adobe has provided no information indicating how long Defendants have used technology supplied by Adobe, or whether Defendants have used any other technology in the relevant time period, or whether the Defendants themselves provide some of the technology necessary to infringe the patent.  Further, Adobe has filed its DJ Action against Select Retrieval in the Southern District of California and now asks that the Court stay the first-filed case against Defendants in favor of that action.  (*Id.* at 7.) In light of the following, Adobe's Motion should be denied.

## V.    ARGUMENT

### A.    Adobe Should Be Denied Intervention As Of Right.

Adobe has not met the requirements of Rule 24(a)(2) to intervene as of right.   To intervene as of right, Adobe must show *all* of the following:   (1) the motion for intervention is timely; (2) Adobe must have a "sufficient" or significantly protectable interest in the litigation; (3) Adobe must be so situated that the disposition of the action may impair or affect Adobe's ability to protect that interest; and (4) Adobe's interest must be inadequately represented by existing parties in the lawsuit.  *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998).  Adobe does not satisfy any of these four factors.

### 1.    Adobe's Motion Is Not Brought At An Appropriate Time.

This is not a timely motion.  Whether a motion for intervention is timely is committed to a court's discretion, and the Third Circuit evaluates three factors to determine whether a motion to intervene is timely: (1) how far the proceedings have gone when the movant seeks intervention; (2) the prejudice to the other parties; and (3) the reason for and length of the delay." *Karr v. Castle*, 768 F. Supp. 1087, 1091 (D. Del. 1991) (quoting *Pennsylvania v. Rizzo*, 530 F.2d 501, 506 (3d Cir. 1976)).

Adobe puts forth little analysis regarding these three factors.   In fact, however, this litigation has been ongoing for fifteen months, and Adobe's own exhibits concede that Adobe has been aware of the litigation since less than <u>one month</u> after its inception, but inexplicably chose to wait until December 2012 to move to intervene. (D.I. 537 at Exhibit E.)    Adobe has not provided any explanation for its delay.  "To the extent the length of time an applicant waits before applying for intervention is a factor in determining timeliness, it should be measured from the point at which the applicant knew, or should have known, of the risk to its rights." *United*

4

*States v. Alcan Aluminum*, 25 F.3d 1174, 1183 (3d Cir. 1994) (holding intervenor timely moved to intervene forty-three days after becoming aware of a risk to its rights); *see also Choike v. Slippery Rock Univ.*, 297 Fed. Appx. 138, 142 (3d Cir. 2008) (denying intervention as untimely as intervenor waited eleven months to intervene after intervenor knew or should of know of the risk to its rights, holding "[timeliness] should be measure from the point at which the applicant knows, or should have known, of the risk to its rights."); *In re Fine Paper Antitrust Litigation*, 695 F.2d 494, 501 (3d Cir. 1982) (denying intervention in part, due to the late stage of the proceedings and also because intervenors "presented no reason for their delay[.]").  At the time it filed its motion, Adobe had known of this suit for <u>over a year</u>.  Indeed, Adobe attaches to its motion a letter from Ross-Simons, which references requests from Ross-Simons to Adobe for indemnification as early as October 7, 2011. (D.I. 537 at Exhibit E.)  Yet, Adobe does not even attempt to explain why it did not seek to intervene sooner.  Adobe's decision to wait on the sidelines of this case for over a year, coupled with the prejudice its proposed intervention will cause to Select Retrieval, weighs in favor of denying intervention as untimely.

Adobe further ignores the prejudice that Select Retrieval will suffer if Adobe is allowed to intervene and the case is stayed.  At this point in the proceedings, a trial date has been set. The parties have exchanged discovery requests and produced documents.  Adobe's intervention and requested stay of proceedings will prejudice Select Retrieval, as it will stay the progress of this case yet again and deprive Select Retrieval of its ability to prosecute the case it brought. Further, as discussed in detail later in this opposition, the outcome of Adobe's declaratory judgment will <u>not</u> be dispositive of the issues regarding Defendants.  Adobe's request for intervention and a stay, if realized, will only delay the current suit even longer.

### 2.    Adobe Does Not Have A "Significantly Protectable" Interest.

Furthermore, Adobe must demonstrate that it holds a "significantly protectable interest" in the current lawsuit to warrant intervention. *Kleissler*, 157 F.3d at 969. The claimed interest in the litigation must be one that "is specific [to those seeking to intervene], is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Id.* at 972. "[T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote." *Id.* Further, "[t]he applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." *Benjamin v. Dep't of Pub. Welfare of Commonwealth*, 432 Fed. Appx. 94, 98 (3d Cir. 2011) (quoting *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987)).

Adobe points to no specific legal obligation or duty that it owes Defendants. Adobe merely claims it has received requests to "defend and indemnify," but Adobe never affirmatively states that it has a legal obligation to do so and, in fact, Adobe's own exhibits show that Adobe has ***refused*** requests for defense and indemnification from at least two of the Defendants. (D.I. 535 at 2; D.I. 537 at Exhibits A and E.)  Moreover, Adobe provides no evidence whatsoever to support that an alleged "cloud" has been cast over its Digital Marketing technology.

This is not the first time Adobe has attempted to use "requests for indemnification" to further its own legal agenda. A 2011 Northern District of California Order granted the dismissal of a declaratory judgment suit brought by Adobe due to lack of subject matter jurisdiction, as Adobe did not allege or demonstrate "that it [had] any legal obligation to indemnify [its customers][.]" *Adobe Sys. v. Kelora Sys. LLC*, 2011 U.S. Dist. LEXIS 140675, at *4 (N.D. Cal. Dec. 7, 2011). As in this case, Adobe brought a declaratory judgment action against Kelora after Kelora sued users of Adobe's "search functionality" technology. *Id.* As in the *Kelora* matter,

Adobe has not provided any evidence that it is legally obligated to indemnify Defendants, and thus Adobe has not shown it has a significantly protectable interest.

>   **3.**    **The Disposition Of The Action Will Not Impair Or Impede Adobe's Ability To Protect Any Alleged Protectable Interests.**

Additionally, the disposition of the action between Select Retrieval and Defendants will not impair or impede Adobe's ability to protect any alleged interest that it may have in this case. It is black letter law that a finding of infringement by Defendants in this case will have no issue preclusive effect with respect to any other defendant in any suit brought by Select Retrieval, including other users of Adobe's Digital Marketing Software technology. *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1569 (Fed. Cir. 1993).

Noninfringement defenses of any other Adobe users accused of infringing the '617 patent will remain intact, as will those of Adobe itself. Moreover, infringement of the '617 patent is based on how each defendant implements various systems and methods, including, for example, the use of database software and structures that are likely unrelated to the Adobe Digital Marketing Software, as well as, potentially, software provided by other vendors or by Defendants. Indeed, all the claims of '617 patent refer to a database, but Adobe, in its Motion, as well as in its complaint in the DJ Action, does not assert that it provides *any* database functionality to its customers.

Furthermore, as discovery is ongoing Select Retrieval cannot yet determine Adobe's involvement with Defendants during the pre-suit damages period. Indeed, in Defendants' initial disclosures, Defendant Charming not only named Adobe Systems Inc. as providing services related to the accused functionality, but also stated that "Fry, Inc. was involved in the design and development of the accused functionality of the accused websites and therefore may have knowledge of their function and operation." Exhibit A to the Declaration of Steven R. Daniels

7

("Daniels Decl."). Furthermore, Charming identified MarketLive, Inc. as being "involved in the design and functionality of www.figis.com and therefore may have knowledge of its function and operation." (*Id.*) It is therefore beyond dispute that Adobe's intervention on behalf of Charming will do nothing to advance a complete adjudication of Select Retrieval's claims against Charming. Critically, none of the Defendants have given any indication as to when Adobe became their supplier. Likewise, Adobe has provided no information as to how long Defendants have been its customers, and it appears that Defendants have used technology provided by other vendors for the accused functionality at some point during the six years preceding this action. This information will be necessary to determine the extent of liability, as well as the measure of damages, for Defendants' infringement of the '617 patent and what role, if any, Adobe had in that infringement.

The future of Adobe's Digital Marketing Software does not hinge on the resolution of this case. Adobe itself has brought its DJ Action seeking a declaration of noninfringement of the '617 patent, which will be sufficient to protect any alleged interest Adobe might have. Thus, a denial of intervention and of the requested stay will not prejudice Adobe.

### 4. Defendants Adequately Represent Adobe's Interests In This Case.

A party attempting to intervene in an action bears the burden of demonstrating that its interests are not adequately represented by the existing parties. FED. R. CIV. P. 24(a)(2). If an intervening party and a present party have the same ultimate objective, a presumption of adequacy of representation arises. *See, e.g., In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortgage Loan Litig*, 418 F.3d 277, 315 (3d Cir. 2005) ("when the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises

that its interests are adequately represented").  Adobe has not and cannot prove that Defendants do not adequately represent Adobe's interests (to the extent it has any).[2]

This Court has considered three non-exhaustive factors in determining the adequacy of representation: (1) proof of collusion between the representative and an opposing party; (2) the representative having an interest adverse to the intervenor and (3) the failure of the representative in the fulfillment of his duty.  *Steinberg v. Shearson Hayden Stone, Inc.*, 598 F. Supp. 273, 281 (D. Del. 1984).

Adobe has not presented *any evidence whatsoever*, which would overcome the presumption of adequate representation.  Defendants have the exact same objective as Adobe—they seek a finding of noninfringement and invalidity of the patent.  Accordingly, Adobe's request to intervene should be denied.

### B.      Adobe Should Not Be Permitted To Permissively Intervene.

Thus having failed to establish its right to intervene, Adobe must seek permissive intervention under Rule 24(b).  Adobe fails here, too.  Permissive intervention is allowed "[o]n timely motion" if the putative intervenor "has a claim or defense that shares with the main action a common question of law or fact," and if such intervention does not "unduly delay or prejudice the adjudication of the original parties' rights."  *Choike v. Slippery Rock Univ.*, 297 Fed. Appx. 138, 142 (3d Cir. 2008) (quoting Fed. R. Civ. P. 24(b)).  Further, the intervenor must have independent jurisdictional grounds.[3]  *Beach v. KDI Corp.*, 490 F.2d 1312, 1319 (3d Cir. 1974)

---

[2] For purposes of this argument, Select Retrieval assumes that Adobe actually has an interest in this lawsuit.  However, it must be noted that Adobe has not made clear what its interest is, if any.  Adobe has not indicated that it has any duty to defend or indemnify Defendants, nor has it indicated its belief that it provides all of the elements of any asserted claim.  Because it has failed even to make this threshold showing, Adobe's motion should be denied.

[3] Importantly, the Court does not have an independent basis for subject matter jurisdiction over Adobe's claims because there is no actual case or controversy between Select Retrieval and

(holding "if the intervention is a permissive one the claim must be supported by independent jurisdictional grounds"). In addition, where applicants for intervention meet the threshold requirements for intervention as of right, which Adobe has not done in this case, courts may deny permissive intervention as a matter of discretion. *Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992) (holding that the Court is "reluctant to intrude into the highly discretionary decision of whether to grant permissive intervention").

As described above, Adobe's motion is not timely, would prejudice Select Retrieval, and would unduly delay this lawsuit. Thus even if Adobe had met the threshold requirements for permissive intervention (which it has not), allowing such an intervention would be an inefficient allocation of judicial resources and should be denied on those grounds as well.

### C.  Severance Is Unwarranted In This Action.

Adobe also seeks to sever the claims against Defendants from the claims against the other defendants in this suit in order to further its efforts to stay the case with respect to Defendants. Although Defendants, the parties with standing to seek severance in this case, have not sought it for over a year, Select Retrieval does not oppose severance in principal.  However, in the event the Court elects to sever the alleged Adobe customers from the claims of the other defendants, Select Retrieval requests that the Court consolidate the cases for purposes of claim construction and validity.[4]  Select Retrieval's claims against Defendants certainly should not be severed for purposes of a stay, as discussed in more detail below.

---

Adobe.  Adobe does not assert that it owes any indemnification obligations to Defendants anywhere in its Motion.  To the contrary, all evidence indicates that Adobe has refused requests by its customers for indemnification.  Moreover, Select Retrieval has not asserted that Adobe directly or indirectly infringes the '617 Patent.

[4] Joinder is proper in this case, in light of the common issues of law and fact, but in the event the Court elects to sever Defendants from the claims of the other defendants, Select Retrieval requests that the Court consolidate the cases for purposes of claim construction and validity.

### D.      The Court Should Deny Adobe's Request For A Stay.

Adobe also seeks the extraordinary relief of a stay of Select Retrieval's claims against Defendants, while allowing the cases against the other defendants to proceed.  But Adobe fails to make the showing required to warrant a stay here.  This Court sets out the factors that must be considered in order to issue a stay of proceedings:  (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is complete; and (4) whether a trial date has been set.  *Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 326 (D. Del. 2009).  The burden is on the party seeking the stay of proceedings, in this case, Adobe. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (following the maxim "justice delayed is justice denied[.]").  Adobe fails to meet this burden.

Moreover, Adobe's attempt to give precedence to its own DJ Action through recourse to cases invoking the "customer suit" exception is inapposite.  The customer-suit exception is inapplicable to this action as Adobe fails to meet the three-part standard for the exception and has failed to provide *any* evidence to meet the standard.  This case is *not* a customer suit, under the applicable standard, and as such no justification exists for delaying adjudication of Select Retrieval's claims against Defendants.

### 1.      A Stay Of The Claims Of The First-Filed Defendants' Action Will Not Simplify The Issues.

Far from promoting judicial economy, a stay of the claims against Defendants will have the opposite effect by creating inefficiencies and slowing down the judicial process.  Further, as mentioned above, a court must measure a request for a stay by whether the stay will simplify the issues at trial.  *Teleconference Sys.*, 676 F. Supp. 2d at 328 (denying a stay as a manufacturer's declaratory judgment would not be "outcome determinative[.]").

11

In its attempt to justify a stay, Adobe asserts that as it "is the only party actually in a position to defend fully against Select Retrieval's claims," its DJ Action "will allow like issues to be adjudicated by a single court[.]" (*Id*.). Adobe further claims that if Select Retrieval prevails in the DJ Action, "Select Retrieval could not collect damages from Adobe's Digital Marketing customers if it first recovered from Adobe itself." (*Id*. at 19.) These assertions are incorrect and misleading.

Select Retrieval has asserted method claims against Defendants and as a result, <u>Defendants</u>, and not Adobe, are the direct infringers whose own conduct is at issue. Defendants operate websites for the sale of its products that practice the claimed methods. In terms of valuing the patented invention for purposes of damages, the enhanced revenues Defendants achieve through actual performance of the patented methods are the direct measure of the benefit conferred by the patented innovation. As a result, Defendants' revenues derived from their own infringing activities are integral to Select Retrieval's ability to demonstrate the value of the patented method, and as such discovery from Defendants is indispensable to Select Retrieval's case. *E.g., Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2011) (affirming damages award based on value derived from use of claimed apparatus, reasoning "we have held that when considering the amount of a use-based reasonable royalty 'adequate to compensate for the infringement,' a jury may consider not only the benefit to the patentee in licensing the technology, but also the value of the benefit conferred to the infringer by use of the patented technology"). Additionally, as mentioned above, it is impossible at this time to determine what Adobe's involvement with Defendants has been in the six years preceding the filing of the complaint in this action, or whether Defendants used another vendor during any part of that time. This information will be absolutely necessary to determine damages.

12

Further, each asserted claim requires use of a database, and Adobe has neither asserted nor put forth any evidence that it provides this essential component; absent such a showing, Adobe cannot meet its burden to demonstrate that resolution against it alone will resolve all infringement issues relating to Defendants' systems. Further, it is unknown at this time whether Defendants were Adobe customers for the six years preceding the filing of this action, the relevant period for damages. Thus, Defendants—the direct infringers in this case—have unique infringement issues and unique access to the most relevant information regarding damages, and Select Retrieval's claims against Defendants cannot and will not be resolved by the outcome of Adobe's DJ Action. A stay of proceedings will simply complicate this case and delay the day when Select Retrieval can obtain the full measure of damages under the law. Thus, a stay will not "advance the goal of judicial economy" as Adobe claims (D.I. 535 at 17), but will simply unnecessarily delay final resolution.

### 2.  A Stay of Proceedings Will Prejudice Select Retrieval.

As the party seeking a stay, Adobe bears the burden of demonstrating that there is not even a "fair possibility" of damage to Select Retrieval. *See Landis*, 299 U.S. at 255. Adobe cannot satisfy this burden.

A stay will disadvantage Select Retrieval by limiting its ability to continue to build its case and by delaying the course of litigation. A trial date has been set in this case. Discovery has been exchanged. Indeed, as discussed above, Select Retrieval will, at a minimum, require additional discovery from Defendants because Defendants' own infringing conduct is at issue, as is the commercial value of that infringement. In addition, discovery must be conducted on the issue of when Defendants became Adobe customers and the extent of those relationships. Such questions may drastically affect the outcome of the case and the outcome of damages. Staying

the case against Defendants would impair Select Retrieval's ability to obtain such necessary information by limiting Select Retrieval to third-party discovery mechanisms. Unlike discovery from parties to an action, discovery of third parties can only be obtained by subpoena. FED. R. CIV. P. 45. Moreover, service and enforcement of third-party discovery can only be adjudicated in district courts satisfying narrow geographic bounds, whereas discovery from parties to a lawsuit may be enforced before this Court. *Id.* As a result, if Defendants prove less than cooperative in producing information responsive to Select Retrieval's requests, Select Retrieval would be forced to conduct piecemeal discovery litigation across multiple courts. Furthermore, third-party discovery is also substantively limited—unlike discovery from parties to a suit, the discovery rules as to third parties do not permit use of interrogatories or requests for admission. *Compare* FED. R. CIV. P. 45 *with* FED. R. CIV. P. 33, 36. Additionally, unlike parties, third parties cannot be compelled to testify at trial if they are outside the jurisdictional limits of the Court. FED. R. CIV. P. 45. Accordingly, it is neither efficient nor just to preclude Select Retrieval from using the substantially broader mechanisms for party discovery to obtain information from those whose own conduct gives rise to this action.

### 3. The Court Should Deny Adobe's Request For A Stay As Adobe Does Not Meet The "Customer Suit" Exception.

Although Adobe does not explicitly request a stay of litigation under the "customer suit" exception, both its reasoning and the case law upon which it rests (*see, e.g.*, D.I. 535 at 15-17) make clear that Adobe is attempting here to take advantage of the "customer suit" exception to stay Select Retrieval's fifteen-month old action in favor or Adobe's recently filed DJ Action. Thus, Select Retrieval's response is couched in those terms.

In patent infringement cases, the customer suit exception allows a court to stay a first-filed suit against customers when the manufacturer brings a later-filed declaratory judgment

14

action.  *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).  The general rule is that "as a principle of sound judicial administration, the first [filed] suit should have priority."  *Kahn v. Gen'l Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) (citations omitted).  The "customer suit" exception is "a narrow exception to the first-to-file doctrine" that permits giving priority to a second-filed manufacturer's action that "would resolve all charges against the customers in the stayed suit, including liability for damages."  *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357-58 (Fed. Cir. 2011) (citing *Kahn*, 889 F.2d at 108).  "The customer suit action exception is used when the first suit is filed against a customer who is a mere reseller of the accused goods, while the second suit is a declaratory action brought by the manufacturer of the accused goods."  *Teleconference Sys.*, 676 F. Supp. at 327.

However, application of the exception is far from automatic—"the 'customer suit' exception is not an inflexible command that a second filed manufacturer's action be tried prior to a first filed action against a customer."  *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 659 (D. Del. 1990).  To the contrary, "where the patent holder has a separate interest in litigating against the defendants in the first filed action, the 'real party in interest' rationale for giving priority to the manufacturer's lawsuit is inapplicable."  *JoeScan, Inc. v. LMI Techs., Inc.,* 2007 U.S. Dist. LEXIS 65498, at *5 (W.D. Wash. Sept. 5, 2007).  As such, courts generally only apply the exception "in situations 'when [a] first suit is brought against the customer in a district where the manufacturer cannot be joined as a defendant,' ***and*** the first suit 'is filed against a customer who is ***a mere reseller*** of the accused goods, while the second suit is a declaratory action brought by the manufacturer of the accused goods."  *See Apeldyn Corp. v. Sony Corp.*, 2012 U.S. Dist. LEXIS 47734, at *18-19 (D. Del. Apr. 4, 2012) (emphasis added).

15

The facts of this case indicate that the "customer suit" exception cannot apply.   In particular, the Federal Circuit has identified three factors to be considered in determining whether the customer suit exception applies:  (1) whether the customer is a "mere reseller" of products, (2) whether it has agreed to be bound by a judgment in favor of the patent owner, and (3) whether the supplier is the only source of infringing products or services.   *See Tegic Commc'n Corp. v. Bd. Of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006). Here, each of these factors weighs against applying the customer suit exception.

### a.    Defendants Are Not "Mere Resellers" Of Adobe's Products.

As to the first prong, Adobe has failed to assert that Defendants are "resellers" of Adobe's products.  Notwithstanding this omission, Select Retrieval contends that Defendants are not "mere resellers" of an accused product, but rather direct infringers by virtue of their performance of the claimed methods.  The courts have held that companies that directly infringe method claims by performing all of the claimed steps cannot claim to be "mere resellers."  *E.g. Pragmatus Telecom, LLC v. The Neiman Marcus Grp., Inc.*, No. 6:11cv620 LED-JDL, at *3 (E.D. Tex. Nov. 20, 2012) (mem.) (denying a stay requested by a manufacturer of software and holding "Defendants do not in any sense resell the software provided to them.  Rather, the Defendants allegedly implement the software and their website visitors allegedly take additional steps to put the entire accused system into use.") (Daniels Decl. at Exhibit B); *In re Laughlin Prods.,* 265 F. Supp. 2d 525, 537 (E.D. Pa. 2003) ("where the patentee alleges that the customers themselves have directly infringed the method or process disclosed in the patent, the customer suit exception does not apply");   *JoeScan, Inc.*, 2007 U.S. Dist. LEXIS  at *4-7 (finding that the manufacturer is "not the 'real party in interest'" where "the patents at issue include method claims that can only be directly infringed by the entity operating the alleged infringing product,"

16

*i.e.* the customer);  *A.P.T., Inc. v. Quad Environmental Techs. Corp.*, 698 F. Supp. 718, 721-22 (N.D. Ill. 1988) (declining to apply the customer suit exception "since the patent at issue here is a process patent, [the manufacturer's] customers are the alleged direct infringers," and as such plaintiff "has independent justification for maintaining its own action against" the customer).

Moreover, "customers" who provide their own infringing products and processes cannot be described as having only a secondary role. *E.g., Pragmatus,* No. 6:11cv620 LED-JDL, at *4 (denying stay to software manufacturer as its customer, the defendant, implemented the infringing methods and the defendant's website visitors put the system into use, which are "vital component[s] in determining infringement/non-infringement") (Daniels Decl. at Exhibit B); *Air Prods. & Chems., Inc. v. MG Nitrogen Servs.*, 133 F. Supp. 2d 354, 357 (D. Del. 2001) (declining to apply the customer suit exception where the "customer" was "not merely a reseller," but rather "directly infringe[d] the patents-in-suit," by, *inter alia*, using the infringing equipment in its own process).

Furthermore, where the plaintiff has a separate interest in pursuing "customers," such as when there are substantial damages claims against them, this too weighs against finding them to be "mere customers."  *See Privasys, Inc.*, 2007 U.S. Dist. LEXIS 86838, at *12 (denying stay where customers were "not mere customers because they… are involved in carrying out the infringement of the patented method," and plaintiff "has significant damages claims against them"); *Lifelink Pharm., Inc. v. NDA Consulting, Inc*., 2007 U.S. Dist. 62674, at *7-9 (N.D. Ohio Aug. 24, 2007) (denying stay where customers were an "integral part" of the distribution network for the accused product, and "have realized substantial profits from their own sales of the [accused product], and, as such are in no way secondary defendants").

17

Here, Defendants are more than mere resellers. Select Retrieval has asserted method claims against Defendants, and as such Defendants are direct infringers whose own conduct is at issue. As in *Pragmatus,* Defendants do not resell the software they allegedly purchase from Adobe, rather, at most, Defendants simply implement Adobe's software. Further, Defendants sell products which require actual performance of the claimed methods for which Adobe does not collect profits. As such, Defendants' revenue derived from their own infringing activities represents a separate and substantial damages base that Select Retrieval has a separate interest in pursuing.

> **b.** **Defendants Have Not Agreed To Be Bound By A Judgment In Favor Of Select Retrieval In Adobe's DJ Action.**

Whether the putative "customers" have agreed to be bound by a judgment affecting the putative "manufacturer" is usually determinative of whether the "customer suit" exception applies. *See Kahn,* 889 F.2d at 1082 ("even if General Motors were a mere customer of Motorola, [GM] has not agreed to be bound by the Illinois decision or any injunction against Motorola" and therefore the stay was denied). Here, Defendants have not agreed to be bound by the outcome of Adobe's DJ Action, and thus the "customer suit" exception does not apply. This fact alone strongly supports denying Adobe's requested stay.

> **c.** **Defendants Independently Provide Infringing Services.**

As discussed above, Defendants provide infringing services independently of Adobe. In other words, Defendants are direct infringers in this case—Defendants are necessary and real parties to this action.

> **4.** **A Stay Would Not Streamline The Issues.**

The Federal Circuit has found that it makes little sense to stay a first-filed action unless a manufacturer's second-filed action can "resolve all charges against the customers in the stayed

suit, including liability for damages." *See Kahn*, 889 F.2d at 1081; *Teleconference Sys.*, 676 F. Supp. 2d at 328 (denying stay of customer cases, "[t]he Federal Circuit held that the first-filed suit can be stayed if it would resolve all charges against the customers in the stayed suit, including liability for damages"). Here, there is simply no indication that Adobe's DJ Action can promise to do so.

For one, neither Adobe nor Defendants have been willing to represent that Defendants will agree to be bound by the outcome of Adobe's DJ Action. *See Teleconference Sys.*, 676 F. Supp. 2d at 328 (denying stay where "[h]ere, the [customer defendants] do not agree to be bound by a decision in plaintiff's favor in California. Therefore [manufacturer] Cisco's California declaratory judgment action will not be outcome determinative of plaintiff's Delaware action"). Moreover, considering that, as discussed above, Defendants are infringing by providing their own services independently of Adobe, it is far from clear that the DJ Action will finally resolve issues relevant to infringement. Indeed, Adobe has not asserted that it dictates or has knowledge of details of Defendants' infringing services. Nor has Adobe asserted that it provides *any* database functionality to its customers, even though all of the claims in the '617 patent refer to a database.

Furthermore, Adobe's DJ Action will not exhaust Defendants' liability for damages. *See e.g., Kahn*, 889 F.3d at 1081-82 (finding that the manufacturer's action cannot resolve all issues as to customer where, inter alia, "because the measure of [the customer's] obligation for damages and [manufacturer's] involve different parameters."). With respect to Defendants' own infringement, Adobe is at most an indirect infringer, and thus Adobe's liability can only encompass the period after it became aware of the patents in suit. In contrast, Defendants are direct infringers. Further, as discussed above, it is unknown when Defendants began to use

19

Adobe products and if Defendants used Adobe products throughout the six years prior to this suit. As such, resolution of indirect infringement claims against Adobe cannot exhaust Defendants' damages liability for pre-suit direct infringement. *See Apeldyn*, 2012 U.S. Dist. LEXIS 47734, at *10-11 (where defendant "indisputably became aware of the [asserted patent] through litigation…plaintiff would be prohibited from collecting damages related to indirect infringement for any pre-knowledge conduct").

### 5.      Adobe Cannot Demonstrate A "Clear Case Of Hardship."

In measurable contrast to the prejudice that Select Retrieval will likely suffer as the result of a stay, Adobe cannot demonstrate a "clear case of hardship" in allowing this case to move forward. For one, Adobe has no standing to assert hardship on behalf of Defendants. The only "hardship" Defendants face is the obligation to account for their own infringing conduct.

Finally, although Adobe asserts that it has received requests for indemnity, it does not appear to have accepted any actual legal responsibility for Defendants. Rather, the letters attached by Adobe to its Motion indicate that Adobe has denied Defendants' requests for indemnification. The letters provide no indication that Adobe has any legal obligation to indemnify or that it intends to do so. In sum, Adobe cannot demonstrate a "clear hardship" faced by Defendants or itself that warrants a stay.

## VI.      <u>CONCLUSION</u>

For the reasons set forth above, Select Retrieval respectfully requests that the Court deny Adobe's Motion to Intervene, Sever, and Stay Proceedings Pending Adjudication of Adobe's Declaratory Judgment Action.

Respectfully submitted,

Dated: December 20, 2012

/s/ Richard C. Weinblatt
Stamatios Stamoulis #4606
     stamoulis@swdelaw.com
Richard C. Weinblatt #5080
     weinblatt@swdelaw.com
STAMOULIS & WEINBLATT LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540

Steven R. Daniels (admitted *pro hac vice*)
     sdaniels@farneydaniels.com
FARNEY DANIELS LLP
800 S. Austin Avenue, Suite 200
Georgetown, TX 78626
Telephone: 512-582-2828

*Attorneys for Plaintiff*
*Select Retrieval, LLC*

21

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2012, I electronically filed the above document(s) with the Clark of the Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.

*/s/ Richard C. Weinblatt*
Richard C. Weinblatt #5080