IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **SELECT RETRIEVAL LLC,** | |
| Plaintiff; | |
| v. | Civil Action No. 1:11-cv-00812-RGA |
| **AMERIMARK DIRECT LLC,** *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

Timothy Devlin, Esq., Farney Daniels PC, Wilmington, DE; Maeghan E. Whitehead, Esq. (argued), Farney Daniels PC, Georgetown, TX; and Steven R. Daniels, Esq., Farney Daniels PC, Georgetown, TX, attorneys for the Plaintiff.

Karen L. Pascale, Esq., Young, Conaway, Stargatt & Taylor LLP, Wilmington, DE; David Ellis Moore, Esq., Potter Anderson & Corroon LLP, Wilmington, DE; Christopher A. Shield, Esq., Bracewell & Giuliani LLP, Houston, TX; Charlene M. Morrow, Esq. (argued), Fenwick & West LLP, San Francisco, CA; and Virginia Demarchi, Esq. (argued), Fenwick & West LLP, San Francisco, CA, attorneys for the Defendants.

October 17, 2013

ANDREWS, UNITED STATES DISTRICT JUDGE:

Pending before this Court is the issue of claim construction of various disputed terms found in U.S. Patent No. 6,128,617.

## I.   BACKGROUND

On September 13, 2011, Select Retrieval LLC ("Plaintiff") filed this patent infringement action. (D.I. 1). The remaining defendants are Macys.com, Inc., Overstock.com, Inc., B & H Foto & Electronics Corp., Charming Shoppes, Inc., Hayneedle, Inc., and Ross-Simons of Warwick, Inc. ("Defendants"). The Patent-in-suit is U.S. Patent No. 6,128,617. Claim 1 is representative and reads:

> 1. A method of retrieving information from a database record having plural fields, comprising:
>
>> rendering on a display screen *plural successive integrated active information documents*, each having one or more *action control elements* integrated into information in the document;
>>
>> obtaining *control element selections* of particular *action control elements* in the *plural successive integrated active information documents*, one or more of the *action control elements* corresponding to one or more fields of the database record; and
>>
>> forming a database query according to the *action control element selections*,
>>
>> whereby the information in subsequent ones of the successive *integrated active information documents* corresponds to *control element selections* made from preceding ones of the *integrated active information documents*.

(emphasis added). The Court has considered the Parties' Amended Joint Claim Construction Brief (D.I. 672). The Court held oral argument on September 9, 2013. (D.I. 704).

## II.   LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312

1

(Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324). When construing patent claims, a matter of law, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotations and citations omitted).

Furthermore, "the words of a claim are generally given their ordinary and customary meaning . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e. as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (internal citations omitted).

A court may consider extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises," in order to assist the court in understanding the underlying technology, the meaning of

2

terms to one skilled in the art and how the invention works. *Id.* at 1317-19 (internal quotation marks and citations omitted). However, extrinsic evidence is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

Finally, "[a] claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

## III. CONSTRUCTION OF DISPUTED TERMS

A. *"integrated active information documents"*

1. *Plaintiff's proposed construction*: no construction is necessary

2. *Defendants' proposed construction*: "documents in which active control elements are integrated into information provided in the document"

3. *Court's Construction*: "documents having one or more action control elements integrated into information in the document"

The Plaintiff argues that the phrase should not be construed because the "phrase is defined by the claim language" and its definition is clear on its face. (D.I. 672 at 15). In response, the Defendants contend that the term has no plain and ordinary meaning and therefore requires construction. (D.I. 672 at 16). The Defendants point the Court to figures 2, 7a, and 7b of the specification as support of their claim construction. (D.I. 672 at 17).

The Court finds that the term is defined within the claim language in claims 1 and 12 as "[a document] having one or more action control elements integrated into information in the

3

document," and thus needs no construction as a patentee is free to "act[] as his or her own lexicographer. . . [when the patentee] has clearly set forth an explicit definition of the term different from its ordinary meaning." *Phillips*, 415 F.3d at 1319. However, as the phrase is only explicitly defined as part of independent claims 1 and 12, and not dependent claims 8, 9, and 10, the Court orders that in claims 8, 9, and 10 the disputed term be construed to mean "documents having one or more action control elements integrated into information in the document."

B. *"plural successive integrated active information documents"*

   1. *Plaintiff's construction*: no construction is necessary, or "more than one, one after another"

   2. *Defendants' construction*: "consecutively rendered active information documents, wherein a subsequent active information document is generated using the result of a database query formed from control element selections made in the preceding document."

   3. *Court's construction*: no construction is necessary other than as explained in discussion of "integrated active information documents."

   With the exception of the phrase "plural successive" the dispute over these terms is the same dispute that the Court resolved with respect to the prior term. Therefore, with respect to the portion of the disputed phrase "integrated active control elements" the Court adopts in full its above analysis.[1]

   As to the phrase "plural successive" the patentees have not departed from the plain and ordinary meaning of this term and there is no need to construe it. *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365-66 (Fed. Cir. 2012).

---

[1] To the extent that the Defendants discuss the prosecution history as related to the "whereby clause," the parties have not asked the Court to construe any language found within the "whereby clause" and thus the Court provides no opinion concerning this issue.

4

C. *"action control elements"*

1. *Plaintiff's construction*: "elements (e.g. text, keystroke, or graphical) the selection of which initiates an action"

2. *Defendants' construction*: "elements (e.g. text, keystroke, or graphical) that can be selected by a user and whose selection initiates an action"

3. *Court's construction*: "elements (e.g. text, keystroke, or graphical) the selection of which initiates an action"

Here the only material dispute between the Plaintiff and the Defendants is that the Defendants' construction includes a reference to a user making the selection while the Plaintiff's construction makes no such reference. The Defendants contend that the reference to the user is necessary as the specification's examples all have a "user" selecting an action control element. (D.I. 672 at 29). Furthermore, the Defendants during oral argument asserted "user" should be further construed to mean a "human user." (D.I. 704 at 40). The Plaintiff responds in its briefing that it does not oppose the Defendants' construction because of the term "user," as the Plaintiff concedes an "action control element" must be selected by a user, but instead on the ground that inventor's chosen language focuses on "what 'action control elements' *are* as opposed to *who* uses them. . . ." (D.I. 672 at 31 (emphasis in original)). Furthermore, during oral argument the Plaintiff indicated that a user may be something other than a person. (D.I. 704 at 43).

The patentee's use of the term "user" in the specification does not act as a disavowal of the patent's claim scope. A function of claim construction is that "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or

5

expressions of manifest exclusion or restriction." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358

F.3d 898, 906 (Fed. Cir. 2004) (internal quotation marks and citations omitted). Furthermore,

"[i]t is likewise not enough that the only embodiments, or all of the embodiments, contain a

particular limitation. We do not read limitations from the specification into claims; we do not

redefine words. Only the patentee can do that. To constitute disclaimer, there must be a clear

and unmistakable disclaimer." *Thorner*, 669 F.3d at 1366-67. Here, as the patentee did not

provide any words in the specification or patent history to restrict the claim, it is inappropriate

for this court to read in such a restriction.[2]

D. *"action control element selection"*

1. *Plaintiff's construction*: no construction is necessary

2. *Defendants' construction*: "control elements (e.g., text, keystroke, or graphical)

selected by a user"

3. *Court's construction*: "selected elements (e.g. text, keystroke, or graphical) the

selection of which initiates an action"

"The parties agree that [action] control element selections are selections of 'action

control elements,' and that such control elements may be text, keystrokes or graphical

representations." (D.I. 672 at 35). The Court concurs. Thus as the Court construed the term

"action control elements" above, the Court need only address the additional term "selection."

The Court finds that as the claim is a method claim, the patentee's inclusion of the term

"selection" was done to indicate that the potential action ("action control element") had been

completed. Thus the Court finds it necessary to construe the term "selection" as "selected" and

for clarity to relocate the term to the beginning of the contested phrase.

---

[2] As the court is not construing the claim to include the term "user," and the issue of whether a user must be a human
was not briefed, the Court does not address this dispute.

6

E. *"a database record having plural fields," "database,"* and *"database query"*

The construction of these terms, if needed, will be decided at a later date. *(See* D.I. 710).

F. *"rendering"*

1. *Plaintiff's construction:* ordinary meaning, or in the alternative, "to depict something"

2. *Defendants' construction:* "drawing or creating an image [on a display]"

3. *Court's construction:* no construction is necessary

The Plaintiff contends that rendering "has a plain and ordinary meaning that is easily understood by a person of ordinary skill in the art, and thus should not be construed." (D.I. 672 at 57). In support of its argument, the Plaintiff cites to a plethora of extrinsic sources. *Id.* The Defendants contend that the conventional meaning of the term rendering, "'to melt down' or 'to extract by melting,'" would unnecessarily confuse the jury. *Id.* at 59.[3] Therefore the Defendants contend that the term must be construed. *Id.* The Defendants support their proposed construction with citations to the specification, in which rendering is equated with drawing. *Id.*

Rendering needs no construction as the term adopts the plain and ordinary meaning as regularly understood by one skilled in the art. *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.,* 508 F.3d 1366, 1371 (Fed. Cir. 2007). It is roughly the equivalent of "depicting." The common usage of "rendering" is supported by both the Plaintiff's citations to six different extrinsic sources and to the term's use in the patent's specification.

G. *"plural nodes at plural levels"*

1. *Plaintiff's construction:* ordinary meaning

---

[3] In the Court's view, no juror would ascribe a "melting" definition to rendering in the context of this patent.

2. *Defendants' construction*: "at least two nodes in each of at least two different hierarchical levels"

3. *Court's construction*: "at least two nodes in each of at least two different levels"

The Plaintiff contends that the phrase is clear based upon the language surrounding the term. (D.I. 672 at 63-64). Conversely, the Defendants contend that construction is necessary "[b]ecause a lay juror is unlikely to have a well-defined or technically accurate understanding of this term as it is used in the patent. . . ." (D.I. 672 at 64). Furthermore, the Defendants contend that the term "hierarchical" should be included in the phrase's construction because it is used in other portions of the claim and specification. (D.I. 672 at 65). The Plaintiff responds that the Defendants' claim construction does not provide a more "'technically accurate understanding' of the term. . . ." (D.I. 672 at 66).

At oral argument, the parties argued that their respective constructions differed in scope. The Plaintiff asserted that its construction would allow a minimum of two nodes, one node at each of two different levels. Conversely, the Defendants maintained that the phrase must be construed as having a minimum of four nodes, at least two nodes at each of at least two levels.

The Defendants' construction tracks the specification, which, as depicted in Figures 2, 5b, and 11, illustrates that in each level there are at least two nodes, for a minimum of four nodes. Furthermore, the plain reading of the claim requires at least four nodes, two nodes at each level. Finally, having at least two nodes at each of at least two levels is consistent with the patentee's invention, which, according to the specification, is designed to simplify the use of computers by "allowing for information to be presented to users in a format that improves understanding of relationships between the information." (D.I. 673 at Ex 1, p. 19). Construing the claims to allow for a single node to be present at each of two levels would do nothing to

8

simplify the problem that the invention set out to address.   Therefore the Court finds that

without the Defendants' construction the claim language would be improperly broadened beyond

the patentee's claimed invention.

The patentee chose to omit the term "hierarchical" in the claim language.  A function of

claim construction is that "[e]ven when the specification describes only a single embodiment, the

claims of the patent will not be read restrictively unless the patentee has demonstrated a clear

intention to limit the claim scope using words or expressions of manifest exclusion or

restriction." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (internal

quotation marks omitted).  Here, as the patentee did not specifically restrict the claim, in either

the specification or prosecution history, to include only hierarchical levels, it is inappropriate for

this Court to read in such a restriction.

## IV.   CONCLUSION

Within five days the parties should submit a proposed order consistent with this opinion

suitable for submission to the jury.