IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**SELECT RETRIEVAL LLC,**

Plaintiff;

v.

Civil Action No. 1:11-cv-00812-RGA

**AMERIMARK DIRECT LLC,** *et al.,*

Defendants.

MEMORANDUM ORDER

Before the Court is a dispute regarding the construction of several claim terms found in U.S. Patent No. 6,128,617. These issues have been fully briefed. (D.I. 672, 700, 727, 739, 790, 791, 792, 799, 800). This is a continuation of the Court's October 17, 2013 Markman Opinion. (D.I. 718).

A.  *"database"*

1.  *Plaintiff's proposed construction*: ordinary meaning, or in the alternative "an organized collection of information"

2.  *Defendants' proposed construction*: "a collection of multiple data records"

3.  *Court's Construction*: "a collection of multiple data records"

The Plaintiff argues that the phrase should not be construed because the term's meaning "is apparent on its face." (D.I. 672 at 58). Further, the Plaintiff argues that "there is nothing in the intrinsic record that reflects an intent to deviate from the plain meaning of the term." *Id.* The Defendants argue that the Patent's specification limits the term to "multiple data records that

1

each includes data in one or more of the fields." *Id.* at 60 (citing `617 Patent 5:66-6:13). Furthermore, the Defendants cite various technical dictionaries in support of their proposed claim construction. *Id.* The Defendants further argue that the construction of the term will clarify its meaning and assist the jury. *Id.* at 59. The Court agrees with the Defendants.

It is clear that there is an ongoing dispute as to the scope of term "database." (*See* D.I. 727, 739, 790, 791). Despite this dispute, the Plaintiff maintains "that there is no discernible difference between the constructions proposed by the Adobe Customer Defendants and the plain and ordinary meaning of those terms." (D.I. 790 at 2). The Court is persuaded by the Patent's own exemplary definition of the term database, within the Patent's specification, along with the extrinsic sources cited by the Defendants. The Court also notes the Plaintiff's proposal is a non-starter; an "organized collection of information" would include most non-fiction books.

B. *"database query"*

1. *Plaintiff's construction*: ordinary meaning, or in the alternative "an instruction or set of instructions that initiates the process of extracting data from a database"

2. *Defendants' construction*: "a request to a database for a record."

3. *Court's construction*: "a request to extract data from a database"

The Plaintiff contends that no construction is necessary, as the term "is readily understood by a person of ordinary skill in the art." (D.I. 672 at 61). Furthermore, the Plaintiff contends that the Defendants' proposed construction places undue emphasis on the term "record." *Id.* The Defendants argue that "[c]ontemporaneous technical dictionaries confirm that a 'query' is a request to a database." *Id.* at 62. Furthermore, the Defendants argue that the Plaintiff's proposed alternative construction would broaden the scope of the Patent to include

initial steps taken by a user that do not directly affect the patented invention. *Id.* at 62, 63. The Defendants additionally argue that the preamble and the specification limits the term to extracting records. *Id.* at 63.

While the Plaintiff argues that the phrase should not be construed, as experts would agree as to its plain and ordinary meaning, the differing proposed constructions provided by the parties indicate the existence of a dispute regarding the phrase's scope. Here, the Court is persuaded that the summary of the invention (`617 patent 2:33-44), along with the technical dictionaries, make it evident that the Defendants are correct that the disputed phrase refers to a "request" to a database and not the initial steps of that request. However, the Court is not persuaded that a request is limited to retrieving a record. To support the argument that a request must retrieve a record, the Defendants cite to the preamble of the invention, which states, "A method of retrieving information from a database record having plural fields . . . ." The Defendants maintain that this statement means that records must be retrieved; however, the plain reading of the statement indicates that data *from* records is retrieved, not necessarily the record in its entirety. Therefore, the Court finds that the result of a query is extraction of data from a database.

C. *"a database record having plural fields"*

1. *Plaintiff's construction*: ordinary meaning

2. *Defendants' construction*: "two or more categories of information in a single database record"

3. *Court's construction*: no construction

3

The Plaintiff argues that no construction is necessary for three reasons. First, the preambles to the claims are not limiting. *Id.* at 49, 50. Second, "the phrase does not require construction because their terms are familiar and have not been given any specialized meanings in this context." *Id.* at 51. Third, the "Defendants' proposed construction contradicts the plain meaning of the term 'field' as defined by multiple extrinsic sources." *Id.* The Defendants argue that the specification supports their construction. *Id.* at 53. Furthermore, the Defendants maintain that the use of the phrase in the preambles of the claims does limit the claim as it "describe[s] structures that comprise the claimed invention and are necessary to give meaning to the subsequent reference to the same structure in the text of the claims. . . ." *Id.* at 54. The Court finds that the phrase in the preambles does not limit the claim and therefore does not need to be construed.

The Federal Circuit has held:

Whether to treat a preamble as a limitation is a determination resolved only on review of the entire patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim.

In general, a preamble limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim. Conversely, a preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.

No litmus test defines when a preamble limits claim scope. Some guideposts, however, have emerged from various cases discussing the preamble's effect on claim scope. For example, this court has held that *Jepson* claiming generally indicates intent to use the preamble to define the claimed invention, thereby limiting claim scope. Additionally, dependence on a particular disputed preamble phrase for antecedent basis may limit claim scope because it indicates a reliance on both the preamble and claim body to define the claimed invention. Likewise, when the preamble is essential to understand limitations or terms in the claim body, the preamble limits claim scope.

4

> Further, when reciting additional structure or steps underscored as important by the specification, the preamble may operate as a claim limitation. Moreover, clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention.
>
> Moreover, preambles describing the use of an invention generally do not limit the claims because the patentability of apparatus or composition claims depends on the claimed structure, not on the use or purpose of that structure.

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002) (internal citations, quotation marks, brackets, and ellipses omitted). Here, the preamble to Claim 1 states in its entirety, "A method of retrieving information from a database record having plural fields, comprising: . . ." The preamble merely describes the patent in general terms, does not put limits on the claim, was not clearly relied upon during prosecution, does not recite additional structural steps, and is not essential to understand limitations or terms in the claim body. Therefore as the preamble does not limit the claim, its construction is not necessary, and the Court need not, and elects not to, construe it here.

D. *"whereby the information in subsequent ones of the successive integrated active information documents corresponds to control element selections made from preceding ones of the integrated active information documents"*

    1. *Plaintiff's construction*: no construction is necessary

    2. *Defendants' construction*: whereby the information in subsequent ones of the successive integrated active information documents is integrated with the results of database queries formed from control element selections made from preceding ones of the integrated active information documents, such that each subsequent integrated active information document

5

integrates action control elements and the results of a database query formed from control element selections made in the preceding document

    3. *Court's construction*: no construction is necessary

The Plaintiff contends that the Defendants' request is an attempt to have the Court reconsider the inventor's purported disavowal of claim scope. (D.I. 800 at 2). The Defendants argue that there is a dispute as to the scope of the whereby clause. (D.I. 799 at 3). The Defendants argue that the dispute as to scope arises out of "whether . . . each control element selection triggers a new database query whose results generate a new active integrated information document, or whether . . . successive documents of the claimed invention can be generated without an intervening database query." *Id*. The Defendants argue that to overcome a "rejection that claims 1 and 12 were obvious in view of a single piece of prior art . . . the applicant amended these claims by adding the same 'whereby' clause to both." (D.I. 799 at 5). The Defendants further argue that to distinguish the present invention from the prior art, the inventor informed the United States Patent and Trademark Office (USPTO) that information in the second integrated active information document is generated from the first active information document. *Id*. Conversely, the Plaintiff argues that there was no clear and unmistakable disclaimer made to the USPTO that justifies the narrowing of the claim. (D.I. 800 at 3, 4). Furthermore, the Plaintiff argues that the prosecution history relied upon by the Defendants is encompassed in the explicit language of claim 1. *Id*. at 4. The Court agrees with the Plaintiff.

The Defendants largely rely on two passages from the prosecution history. First, the inventor stated:

6

> Amended claim 1 recites the rendering of successive integrated active information documents, each having one or more action control elements that are integrated into information in the document. The information in subsequent ones of the successive integrated active information documents corresponds to control element selections made from preceding ones of the integrated active information documents. Accordingly, the integrated active information documents of claim 1 integrate the navigational action control elements with the results of database queries formed from selections of such elements.

D.I. 674-4 at 5. Second, the inventor stated that, "[The prior art] describes an information management system with a Retrieval system that guides an end-user to information objects in Distribution files by generating successive selection menus." *Id.* at 4, 5.

There is "a heavy presumption that claim terms carry their full ordinary and customary meaning, unless [a party] can show the patentee expressly relinquished claim scope." *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1334 (Fed. Cir. 2009). Furthermore, "the doctrine of prosecution history disclaimer narrows the meaning of the claim consistent with the scope of the claim surrendered" when "the patentee unequivocally and unambiguously disavows a certain meaning to obtain a patent." *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013). The Court finds that these passages from the prosecution history do not clearly disavow any claim scope that is not addressed by the whereby clause. In fact, the inventor's entire statement regarding how Claim 1 was amended is present within Claim 1. Therefore, as there is no clear disavowal of claim scope, and any disavowal of claim scope that did occur is encompassed in the whereby clause, there is no need for any further construction of the whereby clause.

7

Within five days the parties should submit a proposed order consistent with both this opinion and the Court's claim construction opinion dated October 17, 2013, suitable for submission to the jury.

Entered this 14th day of March, 2014.

_____
United States District Judge

8